NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3911
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

KIRSTEN GREENAWAY,
                                            Appellant


_____


On Appeal from the District Court of the
Virgin Islands - Appellate Division
(D.C. No. 04-cr-137)
Chief Judge: Hon. Raymond L. Finch
District Judge:  Hon. Curtis V. Gomez
Superior Court Judge: Hon. Edgar Ross
_____


Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2010

Before:   SMITH, CHAGARES and JORDAN, *Circuit Judges*.

(Filed:May 11, 2010)


_____


OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Kirsten Greenaway appeals the judgment of the Appellate Division of the District Court of the Virgin Islands of the United States, which affirmed the judgment of the Superior Court of the Virgin Islands[1] sentencing her to twenty years' imprisonment following her guilty plea to second degree murder. Greenaway contends that she should be permitted to withdraw that plea because it was not given knowingly and voluntarily. For the reasons that follow, we reverse the judgment of the Appellate Division and remand with instructions to return the case to the Superior Court, before which Greenaway should be given an opportunity to withdraw her plea.

## I.  Background

On November 4, 1999, Greenaway and three co-conspirators, Eladio Camacho, Ottice Bryan, and Selvin Hodge, hatched a plot to rob Duvalier Basquin, a taxi driver. Greenaway approached Basquin's cab, representing herself to be a fare-paying customer. Greenaway then instructed Basquin to take her to Bolongo Bay on St. Thomas, where she and Basquin met her three co-conspirators. Greenaway exited the cab and left the scene as Camacho, Bryan, and Hodge beat, stabbed, and robbed Basquin. Basquin died as a result of the injuries he sustained during the robbery.

The four co-conspirators were arrested and charged in the Superior Court with first degree murder. The defendants and the government began plea negotiations, as a result of which Camacho agreed to plead guilty to involuntary manslaughter under V.I. CODE

_____

[1]The Superior Court was known as the Territorial Court at the time of Greenaway's sentencing. For ease of reference, we identify the tribunal using its current name.

ANN., tit. 14, § 924(2), and the remaining defendants received plea deals for second degree murder under V.I. CODE ANN., tit. 14, § 922(b). The four defendants participated in a joint change-of-plea hearing that, according to Greenaway, was disorganized and confused her. Following a discussion of the terms of the defendants' plea deals, the government described the facts of Basquin's attack. Greenaway rejected the government's description and expressed reluctance to plead guilty, stating that "I never plan to catch no taxi [sic]." (App. at 91.) After a discussion with the Court, however, she adopted the facts submitted by the government. The Court and defense counsel then disagreed about whether malice aforethought was an essential element of second degree murder. The Court properly concluded that malice was a necessary component of the crime, *see Gov't of the V.I. v. Sampson*, 94 F. Supp. 2d 639, 644 (D.V.I. 2000), and Greenaway stated that she would not plead guilty. After further discussion with counsel, however, Greenaway resolved her hesitation and indicated that she was willing to enter a plea in accordance with her plea agreement.

The Superior Court accepted Greenaway's plea; however, it never informed her that a conviction for second degree murder entailed a mandatory minimum sentence of five years imprisonment under Virgin Islands law. *See* V.I. CODE ANN. tit. 14, § 923(b) ("Whoever commits murder in the second degree shall be imprisoned for not less than five (5) years ... ."). The record contains no indication that Greenaway knew of this mandatory minimum penalty. The Court sentenced her to twenty years' imprisonment,

3

while Camacho received five years, and Bryan and Hodge were each sentenced to thirty years.

Greenaway appealed to the Appellate Division of the District Court,[2] arguing that the disparity between her twenty-year sentence and Camacho's five-year sentence violated her due process rights, that the trial court failed to consider her good behavior following her arrest as a mitigating factor when imposing a sentence, and that her twenty-year sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. Greenaway did not challenge her guilty plea in any way before the Appellate Division, which affirmed the judgment and sentence of the Superior Court. Greenaway then filed a timely appeal to our court.

---

[2]On January 29, 2007, the Supreme Court of the Virgin Islands assumed the District Court's appellate jurisdiction. *See Hypolite v. People of the V.I.*, S. Ct. Crim. No. 2007-135, 2009 WL 152319, at *2 (V.I. Jan. 21, 2009) ("The Supreme Court officially assumed appellate jurisdiction over appeals from the Superior Court on January 29, 2007."); *see also Supreme Court of the United States Virgin Islands*, History of the Court, at http://www.visupremecourt.org/Know_Your_Court/History_of_the_Court/index.asp (last accessed Apr. 7, 2010). However, because Greenaway appealed from the Superior Court before the Supreme Court of the Virgin Islands had assumed jurisdiction, her appeal remains with the Appellate Division of the District Court. *See* 48 U.S.C. § 1613a(d) ("The establishment of the [Supreme Court of the Virgin Islands] shall not result in the loss of jurisdiction of the district court over any appeal then pending in it. The rulings of the district court on such appeals may be reviewed in the United States Court of Appeals for the Third Circuit and in the Supreme Court notwithstanding the establishment of the [Supreme Court].").

## II. Discussion[3]

In the appeal before us, Greenaway's sole argument is that her guilty plea was not knowing, voluntary, and intelligent, an issue that she failed to preserve before either the Superior Court or the Appellate Division. We therefore review for plain error. *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008). To establish plain error, Greenaway must (1) identify an error that (2) appears on the face of the proceedings and (3) affects substantial rights and that, unless corrected, would (4) result in a miscarriage of justice. *United States v. Cesare*, 581 F.3d 206, 209 (3d Cir. 2009).

Greenaway has identified numerous defects in her plea colloquy that allegedly rendered her plea uninformed and unintelligent. She claims that the lack of clarity regarding whether malice aforethought was required for second degree murder confused her, and that the government's initial statement of the facts, to which she objected, made it difficult for her to understand the factual basis of the crime for which she was admitting culpability. She also argues that the Superior Court's failure to inform her of her right to appeal, of the circumstances under which she would be permitted to withdraw her plea, and of the mandatory minimum sentence resulted in her plea being uninformed.[4]

---

[3]The Appellate Division of the District Court had jurisdiction to hear Greenaway's appeal from the Superior Court under 48 U.S.C. § 1613a(a). We have jurisdiction under 48 U.S.C. § 1613a(c) and 28 U.S.C. § 1291.

[4]Greenaway also asserts that the Court failed to inform her of the statutory maximum sentence even though the Court indicated that "[f]or Second Degree [Murder] ... the maximum possible punishment is up to life imprisonment." (App. at 81.) Greenaway is technically correct, in that a court may not impose a life sentence for second degree

We need not discuss each of Greenaway's contentions at length, however, because we conclude that the Superior Court's failure to apprise her of the mandatory minimum sentence was alone sufficient to render her plea less than knowing, voluntary, and intelligent.

"In order for a guilty plea to comply with the requirements of the Due Process Clause of the Fifth Amendment, it must be knowing, voluntary and intelligent." *United States v. Tidwell*, 521 F.3d 236, 251 (3d Cir. 2008). That standard requires the defendant to "be advised of and understand the *direct* consequences of a plea." *United States v. Salmon*, 944 F.2d 1106, 1130 (3d Cir. 1991) (emphasis in original). In *Jamison v. Klem*, 544 F.3d 266 (3d Cir. 2008), a state habeas case filed under 28 U.S.C. § 2254, the petitioner pled guilty following a colloquy during which he was informed of the maximum sentence for his crime but not of the mandatory minimum. *Id.* at 268-69. He filed a petition for a writ of habeas corpus, seeking leave to withdraw his guilty plea on the ground that the plea was uninformed. *Id.* at 271. The district court denied the motion, and we reversed. On appeal, we found that knowledge of the maximum sentence alone was constitutionally inadequate to ensure that the defendant entered a knowing and

---

murder but must instead sentence the defendant to a term of years. *Ruiz v. United States*, 365 F.2d 500, 501 (3d Cir. 1966). As a practical matter, though, the court may impose a term of years that will unquestionably exceed the defendant's remaining life expectancy. *Id.* Thus, we believe that the Superior Court's description of the maximum sentence, while technically flawed, was nevertheless sufficient to apprise Greenaway that her plea could result in her spending the remainder of her life in prison. In any event, the maximum penalty should be made clear to Greenaway during the proceedings on remand.

intelligent plea. *Id.* at 277. Rather, "[i]t is at least as important for the accused to be accurately informed of the minimum amount of incarceration that he/she will have to serve pursuant to a guilty plea." *Id.* Therefore, the petitioner had not entered a knowing, voluntary, and intelligent plea, and we remanded the case to the district court with instructions to issue a writ of habeas corpus allowing him to withdraw the plea before the state court. *Id.* at 279.

*Jamison* compels us to vacate the District Court's judgment upholding Greenaway's plea. Without knowing the minimum sentence for second degree murder, Greenaway could not understand the direct consequences of her plea, thereby rendering it uninformed and, by definition, less than knowing. The Superior Court's acceptance of an uninformed plea constitutes error that is plain from the face of the proceedings.[5] We

---

[5]*Jamison* had not yet been decided at the time of Greenaway's guilty plea colloquy on April 13, 2004. However, the Supreme Court had for several decades required—and continues to require—that defendants be informed of the direct effects of a plea and have "a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244 (1969); *see also Brady v. United States*, 397 U.S. 742, 755 (1970) (requiring defendants to be informed of the "direct consequences" of pleading guilty). In *Jamison*, we concluded that few, if any, consequences of pleading guilty are more direct than the mandatory prison term that a defendant will receive once the court accepts the plea. 544 F.3d at 277. For that reason, several of our sister courts of appeals had concluded well before 2004 that knowledge of the mandatory minimum sentence is an essential component of a knowing plea. *See, e.g., United States v. Clark*, 274 F.3d 1325, 1330 (11th Cir. 2001) ("Before accepting a guilty plea, the court must specifically inform the defendant of any mandatory minimum penalty provided by law."); *United States v. McDonald*, 121 F.3d 7, 11 (1st Cir. 1997) (finding that failure to inform the defendant of the mandatory minimum sentence qualifies as plain error, even though it may not affect substantial rights in every case); *see also United States v. General*, 278 F.3d 389, 394 (4th Cir. 2002) (same). Thus, even though the Superior Court did not have the benefit of our decision in *Jamison* at the time of Greenaway's hearing, the

further conclude that this error affected Greenaway's substantial rights because it prevented her from entering an informed plea with knowledge of the full range of effects that would flow from it. *Cf. Goodson*, 544 F.3d at 540 (finding, in a case challenging the validity of an appellate waiver, that an error affects a defendant's substantial rights if it "preclud[ed] him from knowing of and understanding the significance of the binding appellate waiver in the plea agreement"). Finally, few principles of criminal law are more essential to the fairness of a plea colloquy than the requirement that a defendant know of the consequences of a guilty plea before the court accepts it. *See Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969) ("What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."). We therefore conclude that affirming the District Court's judgment over Greenaway's uninformed plea would result in a miscarriage of justice. *Cf. United States v. Corso*, 549 F.3d 921, 929 (3d Cir. 2008) (stating that we will find a miscarriage of justice if an error would "affect[] the fairness, integrity or public reputation of judicial proceedings" (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). In short

---

requirement that the court inform her of the mandatory minimum sentence was sufficiently well-established that its failure to do so constitutes plain error. *See United States v. Ellis*, 326 F.3d 593, 596-97 (4th Cir. 2003) (noting that, in the absence of precedent from within a circuit, "decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain").

8

because Greenaway has established that her plea to second degree murder was not knowing,[6] the Superior Court's acceptance of that plea constitutes plain error.

**III.     Conclusion**

Accordingly, we will reverse the judgment of the Appellate Division of the District Court.  We will remand this case with instructions that the Appellate Division return the matter to the Superior Court, before which Greenaway must be given an opportunity to withdraw her guilty plea.

---

[6]It can certainly be argued that a plea that is not knowing is, per force, also not intelligent or, in a meaningful sense, voluntary, but we need not parse the meaning of each term in the test.  That the plea was not knowing is alone sufficient to carry the day.